Royal LEONARD, Appellant,

v.

STATE of Indiana, Appellee.

No. 55S01–9109–CR–761.

Supreme Court of Indiana.

Sept. 27, 1991.

David D. Fairman, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

The question presented by the State's petition to transfer is whether the "guidelines" set forth in *Dowell v. State* (1990), Ind.App., 557 N.E.2d 1063, to determine a knowing, intelligent, and voluntary waiver of a defendant's right to counsel are mandatory in making that determination. We hold that they are not.

Leonard (defendant below) was charged with two counts of child molesting as Class B and Class C felonies, respectively. Approximately one month before trial, Leonard wrote a note to the trial court stating that he did not wish to have counsel represent him. The trial court conducted a hearing in order to ascertain the nature and extent of the defendant's request. During the hearing, based on questions from Leonard's counsel, as well as the court itself, the court determined that Leonard wanted to conduct his own trial with stand-by assistance from Leonard's counsel. The court granted that request and, one month later, trial to the court proceeded with Leonard conducting his own defense with stand-by assistance of counsel. At the conclusion of the evidence, the trial court adjudged that Leonard was guilty of child molesting and, subsequently, sentenced him to 20 years. Leonard requested assistance of counsel for purposes of appeal and, on appeal to the Court of Appeals, argued that the trial court erred in allowing Leonard to proceed to trial without counsel, because Leonard had not made a clear and unequivocal assertion of his right to self-representation and, additionally, had not knowingly, voluntarily, and intelligently waived his right to counsel. The Court of Appeals reversed and held that Leonard had, in fact, made a clear and unequivocal request to proceed *pro se*, but, applying *Dowell v. State* retroactively, agreed with Leonard that the trial court failed to make all the inquiries required by *Dowell* and, consequently, held that Leonard's waiver of his right to counsel was not knowing, voluntary, or intelligent.

In so holding, the Court of Appeals, 573 N.E.2d 463, acknowledged that the advisements Leonard received during the hearing conducted to determine his preference in representation would have been sufficient under the law as it existed before *Dowell*, but did not include all of the inquiries required by *Dowell*.

Because we disagree with the Court of Appeals' elevation of the *Dowell* guidelines

to the status of required inquiries, we grant transfer and affirm Leonard's conviction.

In *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, the Supreme Court held that the right to counsel guaranteed by the Sixth Amendment to the United States Constitution guaranteed an accused the right to represent himself when he voluntarily and intelligently elected to do so. In so holding, the Court recognized that this right conflicted with the Court's previous decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel. Therefore, the Court held that an accused's decision to represent himself must be premised on a knowing and intelligent waiver of the right to counsel. In determining whether or not the record supported such a waiver, the Court noted that (1) the trial judge had warned the accused that he thought it was a mistake to reject the assistance of counsel and (2) the accused would be required to follow all the court "ground rules" of trial procedure. The Court concluded that Faretta had waived his right to counsel and that the trial court had erred in denying him his constitutional right to conduct his own defense. His conviction was reversed.

Following the *Faretta* decision, this Court on several occasions has been called upon to determine whether the trial court properly responded to a defendant's request to represent himself. *Russell v. State* (1978), 270 Ind. 55, 383 N.E.2d 309; *Nation v. State* (1983), Ind., 445 N.E.2d 565; *Jenkins v. State* (1986), Ind., 492 N.E.2d 666; and *Kindred v. State* (1988), Ind., 521 N.E.2d 320. In *Russell*, this Court held that the clear and unequivocal assertion of the self-representation right must be made in a timely fashion and that the record must affirmatively show, at a pre-trial hearing, awareness of the implications, consequences, and risks of self-representation. In *Nation*, we rejected the defendant's claim that he had not knowingly and intelligently waived his right to counsel because the record revealed that the "Defendant, after being well apprised of the dangers inherent in such undertaking, understood the choices available to him and elected to proceed *pro se.*" 445 N.E.2d at 569. In *German v. State* (1978), 268 Ind. 67, 373 N.E.2d 880, we held that appointment of stand-by counsel is the recommended procedure for the trial court to follow in order to preserve a defendant's rights when such defendant elects to represent himself. Most recently, in *Kindred v. State*, we cited *Faretta v. California* for the requirement that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " 422 U.S. at 835, 95 S.Ct. at 2541. We further held that the record clearly demonstrates the trial court made certain that the defendant was "aware of his right to counsel and the disadvantages of self-representation." 521 N.E.2d at 323.

Against the backdrop of these decisions, the trial court here, upon being apprised by Leonard of his desire to represent himself, conducted a hearing as recommended by this Court in *German v. State*. At the hearing, conducted approximately one month before trial, Leonard stated that he wanted counsel to subpoena witnesses, but that he wanted to question the witnesses himself. At that point, his attorney examined him with regard to this request. During that examination, Leonard was told by his counsel and acknowledged the fact that his counsel would prepare for trial by conducting depositions and investigation and that Leonard, because of his confinement, could not do so. Leonard also acknowledged that he was not a lawyer and had had no law school experience, but had considerable experience in trials which caused him to feel comfortable "running his own show." Further, his counsel stressed to him that an attorney had experience in trial strategy and tactics that Leonard did not have and thus Leonard might make damaging errors that an attorney would not make. His counsel asked Leonard if he were willing to "sink or swim" with his decision if the judge determined to grant his request to proceed *pro se.* Leonard

acknowledged that the entire trial would be "all on his shoulders" if the attorney withdrew and he proceeded *pro se*. Following this examination, the trial court conducted its own examination. The trial court instructed Leonard that a person who represents himself has a "fool for a client," and that he would "be a fool to sit there and ask [his] own questions." The court also told him that it would not be to his advantage to represent himself, but that he would benefit by letting his attorney ask questions with his assistance. Leonard was informed that his questions might "open up all sorts of things that otherwise wouldn't necessarily come in—like [his] criminal record." He was made aware that an attorney screens questions in order to avoid asking questions that might open up past conduct and criminal records. Finally, the trial court instructed him that it would not be wise to represent himself, but that if he were "dead certain" that he wanted to do it, that the trial court would have to allow it.

After acknowledging that he understood all of these advisements, he was asked again if he wanted to represent himself. He replied, "Yes, sir." After this, he was told that he would have to abide by the same rules as an attorney and that he would not be allowed to request counsel assistance halfway through the trial. After conducting this hearing, the trial court granted Leonard's request to represent himself and appointed Leonard's counsel to act as "stand-by counsel" to assist Leonard during the trial.

We hold that the trial court properly followed the controlling decisions of this Court in conducting the hearing, apprising Leonard of the disadvantages of self-representation, determining that Leonard was knowingly, intelligently and voluntarily waiving his right to counsel, and exercising his constitutionally-guaranteed right to proceed *pro se*. Finally, the trial court correctly ordered Leonard's counsel to be "stand-by-counsel" during the trial.

After Leonard's trial, the Court of Appeals decided the case of *Dowell v. State*. The Court of Appeals reversed Dowell's conviction for theft and forgery because the trial court had not advised Dowell of the dangers and disadvantages of self-representation and, therefore, his waiver of the right to counsel was not knowing, intelligent, and voluntary. The Court of Appeals, however, continued its opinion by stating that "to establish a knowing, intelligent, and voluntary waiver of a defendant's right to counsel, trial courts should use the following *guidelines* which are based on the everyday realities of criminal trials." 557 N.E.2d at 1066 (emphasis supplied). The court then offered guidelines which the trial courts should follow.

We do not disagree with the guidelines set forth in *Dowell v. State*. To the contrary, we believe that the trial courts should use such guidelines in order to establish a knowing, intelligent and voluntary waiver of a defendant's right to counsel. We do not agree, however, that such guidelines should constitute a rigid mandate setting forth specific inquiries that a trial court is required to make before determining whether a defendant's waiver of right to counsel is knowing, intelligent, and voluntary. In this case, the record of the trial court's hearing was sufficient to establish that Leonard, after being apprised of the advantages of representation by counsel and the pitfalls which he might experience if he insisted on self-representation, voluntarily, knowingly, and intelligently chose to represent himself with the stand-by assistance of counsel.

The Court of Appeals' opinion, additionally, raises the spectre that Leonard was incompetent to make this decision because of mental disability that had been diagnosed while he was incarcerated in a federal prison in Missouri. The Court of Appeals noted that the trial court was aware of his well-documented history of mental illness/psychosis, but, nevertheless, made no inquiry into Leonard's mental competence during the hearing held on his request to proceed *pro se*. Further, the Court of Appeals stated that Leonard's "nearly incoherent presentation at this hearing and at the trial in this matter militate against the conclusion that Leonard could knowingly and intelligently waive the

right to counsel." 573 N.E.2d at 466. The Court of Appeals concluded that Leonard's background experience and conduct did not clearly indicate a knowing, voluntary and intelligent waiver of his right to counsel. We disagree.

The record reveals that Leonard's mental competence and stability were placed into issue before the hearing was held on his request to represent himself. However, the record also reveals that such issue was reached by the medical reports of two psychiatrists who examined Leonard prior to the hearing. One psychiatrist informed the court that Leonard's intellectual abilities appeared to be reasonably good, and that he could cooperate with legal counsel in his own defense. The second psychiatrist reported to the court that Leonard's speech was logical, coherent, and relevant, and that he appeared to manifest adequate thinking and judgment, as well as adequate mental and emotional capacity to stand trial and to assist his attorney in his defense. With knowledge of these two reports, we cannot say that the trial court erred in determining that Leonard's choice to represent himself was knowingly, voluntarily and intelligently made.

With regard to the Court of Appeals' notation that Leonard's presentation at the hearing and trial were "nearly incoherent," we again disagree. The record shows that Leonard was monosyllabic during the hearing, in that he answered the court's and his attorney's questions affirmatively. With regard to his conduct during the trial, the record reveals that Leonard cross-examined the two key witnesses—the victim and her mother. While such cross examination was not artful, it also was not incoherent. Additionally, Leonard testified in his own behalf and straight-forwardly informed the jury that, while he may have fondled the victim at one time when he fell asleep with her in his lap, he did not engage in sexual intercourse with her. In summary, we agree with Judge Garrard's dissent that the characterization of the Court of Appeals' majority of Leonard's presentation as "nearly incoherent" is a gross overstatement.

We conclude that Leonard voluntarily, intelligently and knowingly chose to exercise his constitutional right to self-representation, and that the trial court's ruling in this regard was supported by substantial evidence and should be affirmed.

Therefore, we accept transfer of this cause and affirm Leonard's conviction.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.