In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2470

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROSIVITO HOSKINS,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond
Division.
No. 99-CR-117--Rudy Lozano, Judge.

Argued February 22, 2001--Decided March 21,
2001

   Before BAUER, COFFEY, and MANION, Circuit
Judges.

   COFFEY, Circuit Judge.  Rosivito Hoskins
was convicted for being a felon in
possession of a firearm, 18 U.S.C. sec.
922(g)(1), and sentenced to 293 months
imprisonment and five years supervised
release. Hoskins appeals, arguing that he
was denied his Sixth Amendment right to
counsel at sentencing when the district
court refused to appoint substitute
counsel after Hoskins discharged his
appointed counsel. We affirm.

I.  FACTUAL BACKGROUND

   On August 19, 1999, a federal grand jury
indicted Rosivito Hoskins for being a
felon in possession of a firearm in
violation of 18 U.S.C. sec. 922(g)(1).
Hoskins went to trial on November 29,
1999, with Mr. Michael W. Bosch as his
court-appointed counsel. On December 2,
1999, the jury informed the trial judge
that they had been unable to reach a
unanimous verdict at the time, and
shortly thereafter the court granted the
government's motion for a mistrial. A
second trial commenced on December 10,

1999, and the jury returned a verdict of guilty. The trial court scheduled sentencing for March 9, 2000.

On March 6, 2000, Hoskins filed pro se a motion entitled "Emergency Notification of ineffective assistance of counsel" that included complaints about his appointed attorney and objections to the presentence investigation report (PSIR). Hoskins asserted that his appointed counsel, Mr. Bosch, "failed to object to various parts of the report which . . . [were] inaccurate, . . . and that there [were] legal objections . . . that counsel should [have] pursued." In response to Hoskins's motion, the district court held a hearing March 7, 2000, on Hoskins's claim of ineffective assistance of counsel. At the outset of the hearing, the court engaged in thefollowing colloquy with Hoskins:

THE COURT: Mr. Hoskins, I will tell you now that when I appoint an attorney, it does not guarantee a result, number one. Number two, when I appoint an attorney, that does not guarantee that I will give you another attorney. Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you discharge your attorney and I will tell [you] if you discharge him, you have complete control over that. You can fire him, but I may not give you another attorney; and you may have to represent yourself pro se. Do you understand me?

THE DEFENDANT: Yes.

After warning Hoskins that he might have to proceed pro se if he chose to discharge his attorney, the court asked him why he wanted to terminate Mr. Bosch's services. Hoskins responded only, "because he's not in my best interests." The court then asked Hoskins on what was he basing his belief, and Hoskins stated that he had been "sitting over in MCC for almost eighty days, and this is the first time [he had] seen" Mr. Bosch since the conclusion of the trial. Despite further inquiry, the trial judge was unable to elicit any other information from Hoskins as to the reasons for his dissatisfaction with his appointed attorney. Nevertheless, the court offered to grant Hoskins a continuance in order that he

might talk further with Mr. Bosch, specifically about his objections to the PSIR, but Hoskins responded stating that he "doubt[ed]" that would satisfy him.

The court continued its attempt to determine the basis for Hoskins's dissatisfaction with his appointed attorney, Mr. Bosch, apart from Mr. Bosch's failure to visit Hoskins after his conviction. But Hoskins only repeated that he didn't "think [counsel] has the best of interest to defend me." When asked for the specific basis for his opinion, Hoskins responded "[b]ecause that's the way I feel." The court described Hoskins's motion as "a stall tactic." Accordingly, because Hoskins had provided no reason for the appointment of substitute counsel, the court denied his request for new counsel as untimely.

After the court denied Hoskins's request for other counsel, it proceeded to discuss the ramifications of discharging his present-appointed counsel. The court explained to Hoskins that he had denied his motion for a new attorney, and that it was his choice now between representing himself or keeping Mr. Bosch as his counsel. The court further advised Hoskins that he would be far better off being defended by a trained lawyer and that it would be "unwise" to defend himself because of the complexity of the legal issues involved. The court then asked him if he had ever studied the law or applied the Sentencing Guidelines, and Hoskins responded that he had not. Although Hoskins responded that he was "not going to represent [himself,]" he persisted in expressing his desire to discharge Mr. Bosch. At this time, the court repeated its offer to grant Hoskins a continuance to allow him to talk with Mr. Bosch and reconsider his decision. Hoskins accepted the continuance, and the trial judge continued the hearing on Hoskins's motion to March 15, 2000.

At the continued hearing, the court again informed Hoskins that his choices were to proceed pro se or to continue with Mr. Bosch as his appointed counsel. The court also provided Hoskins still another opportunity to explain why he was not satisfied with Mr. Bosch, but Hoskins only repeated the same arguments he had made at the March 9 hearing. Ultimately, when faced with the choice between

proceeding with Mr. Bosch and representing himself, Hoskins stated that he "want[ed] to fire [Mr. Bosch] and go pro se." Accordingly, the court discharged Mr. Bosch, but also granted a second continuance, now rescheduling the sentencing hearing for April 21, 2000, so that Hoskins might retain counsel.

On April 21, 2000, Hoskins asked the court for another continuance so that his mother could obtain a loan on her house and apply those proceeds to obtain counsel. The court granted this continuance, but warned Hoskins that the sentencing would proceed on May 23, 2000, regardless of whether Hoskins had successfully obtained counsel. Hoskins agreed to "be ready to go with or without" counsel. On May 23, 2000, the court conducted Hoskins's sentencing hearing. Hoskins advised the court that he had been unable to retain substitute counsel, and thus proceeded to represent himself pro se. The court sentenced Hoskins to the maximum allowed in the Sentencing Guidelines, 293 months imprisonment and five years supervised release.

## II.  ISSUES

Hoskins asserts on appeal that the district court's refusal to appoint new counsel after it discharged his appointed counsel denied him his Sixth Amendment right to counsel at sentencing because Hoskins claims that: 1) he had not waived his Sixth Amendment right to counsel; and 2) even if he had waived his right to counsel, he did not do so knowingly and intelligently. We review de novo the district court's finding of a waiver of the right to counsel. United States v. Altier, 91 F.3d 953, 955 (7th Cir. 1996).

## III.  DISCUSSION

Hoskins was entitled to counsel during sentencing. Rini v. Katzenbach, 403 F.2d 697 (7th Cir. 1968). Like other constitutional rights, the right to the assistance of counsel can be waived. United States v. Sandles, 23 F.3d 1121, 1126 (7th Cir. 1994). If a criminal defendant seeks to waive his Sixth Amendment right to counsel, he must do so knowingly and intelligently. United States v. Irorere, 228 F.3d 816, 828 (7th Cir. 2000). In determining whether a

defendant has knowingly and intelligently waived his right to counsel, we will "'indulge every reasonable presumption against waiver.'" United States v. Goad, 44 F.3d 580, 588 (7th Cir. 1995) (quoting United States v. Belanger, 936 F.2d 916, 919 (7th Cir. 1991) (citations omitted)). It is not necessary, however, "'that the defendant verbally waive his right to counsel; so long as the district court has given a defendant sufficient opportunity to retain the assistance of appointed counsel, defendant's actions which have the effect of depriving himself of appointed counsel will establish a knowing and intentional choice.'" Irorere, 228 F.3d at 828 (quoting United States v. Fazzini, 871 F.2d 635, 642 (7th Cir. 1989)).

   Hoskins initially argues that he never unequivocally waived his right to counsel. In support Hoskins points to his desire to retain counsel and to the portion of his colloquy before the district court wherein he stated, "I'm not going to represent myself pro se." But although Hoskins claims that he made it clear he wanted substitute counsel, he also clearly signaled his willingness to proceed pro se if Bosch were his only choice. During the colloquy, Hoskins stated that he "want[ed] to fire [Mr. Bosch] and go pro se." Further, the trial judge repeatedly warned Hoskins that he might not appoint other counsel if Hoskins chose to fire Mr. Bosch. Moreover, the trial judge explicitly ruled that it would not appoint substitute counsel before Hoskins decided whether to discharge Mr. Bosch. Thus, Hoskins was fully aware when he made his decision to discharge Mr. Bosch that he would have to proceed pro se unless he retained counsel. See Oimen v. McGaughtry, 130 F.3d 809, 811 (7th Cir. 1997) (defendant's insistence on discharging counsel held to be a waiver of the right to counsel where he was warned that he might not get new counsel). Accordingly, Hoskins made his choice "with eyes open," United States v. Avery, 208 F.3d 597, 601 (7th Cir. 2000) (quoting Faretta v. California, 422 U.S. 806, 835 (1975)), and his hope to retain counsel does not make his waiver equivocal.

   Hoskins next argues that, even if he did waive his right to counsel, his waiver

was not knowingly and intelligently made. We examine four factors in considering whether a defendant's waiver was knowing and intelligent: 1) the extent of the court's inquiry into the defendant's decision; 2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, 3) the background and experience of the defendant, and 4) the context of the defendant's decision to proceed pro se. United States v. Moya-Gomez, 860 F. 2d 706, 735-36 (1988); Sandles, 23 F.3d at 1126. The district court is in the best position to assess whether a defendant has knowingly and intelligently waived counsel, and we will

most likely uphold the trial judge's decision to honor or deny the defendant's request to represent himself where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion about the defendant's understanding of his rights and the voluntariness of his decision.

Goad, 44 F.3d at 588 (quoting United States v. Berkowitz, 927 F.2d 1376, 1383 (7th Cir. 1991)).

Based on our review of the record, we are satisfied that the district court made an adequate inquiry into Hoskins's understanding of the advantages and disadvantages of proceeding pro se. In this case, the district court engaged in a lengthy colloquy, over the course of a two-day hearing, with Hoskins before discharging Mr. Bosch. In that colloquy, the district court "advised [Hoskins] about . . . the benefits associated with the right to counsel, the pitfalls of self-representation, and the fact that it is unwise for one not trained in the law to try to represent himself." Goad, 44 F.3d at 586 (quoting Berkowitz, 927 F.2d at 1383). The district court repeatedly warned Hoskins of the consequences of proceeding pro se and advised him against it. It discussed the complexity of the Sentencing Guidelines and Hoskins's lack of familiarity with them. Further, the court granted a continuance in the hearing on Hoskins's motion in order that Hoskins might confer with Mr. Bosch and reflect further upon his stated decision. Finally, the district court explicitly informed Hoskins that it would not appoint a substitute counsel before

Hoskins fired Mr. Bosch. Accordingly, we are convinced that the record as a whole supports our holding that Hoskins was provided with sufficient information to make a knowing and intelligent waiver of his right to counsel; indeed, we are of the opinion that the district court did everything in its power to convince Hoskins to reconsider his decision to proceed pro se.

   The judgment and sentence of the district court is AFFIRMED.