**William C. BALFOUR, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A05–0201–CR–48.

Court of Appeals. of Indiana.

Dec. 18, 2002.

Joseph P. Hunter, Public Defender, Muncie, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

William C. Balfour appeals his convictions of battery as a Class A misdemean-

or,[1] disorderly conduct as a Class B misdemeanor,[2] criminal mischief as a Class B misdemeanor,[3] and criminal recklessness as a Class B misdemeanor.[4] On appeal, Balfour claims that his right to counsel under the Sixth Amendment to the United States Constitution[5] was violated when he was tried without counsel.[6] We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment follow. On April 25, 1998, Balfour and his girlfriend, Angie Shouse, had a fight. As a result of the fight, Angie had bruises on her left cheek and forehead and swelling around her left eye and on her left cheek. After the fight, Angie took her children and went to the home of her mother, Kathy Shouse. Later that same evening, Balfour called Kathy, told her that he wanted to speak to Angie, and told her that he was coming to Kathy's house. Immediately thereafter, Kathy received a phone call from Balfour's sister who told Kathy that she should move her cars. Seconds later, Kathy heard a car come to a screeching halt on the street outside her house. Kathy went to the window and saw Balfour standing outside his car screaming. Balfour pulled a gun out from underneath his shirt, fired it into the air, and

then shot at both of Kathy's cars. Balfour left the scene, and Kathy called the police.

Muncie Police Officer Cheryl Mench responded to Kathy's call. Officer Mench noted the bruises and swelling on Angie's face, and Angie informed Officer Mench that Balfour had beaten her. Police found four shell casings on the street. Balfour had shot a window out of one of Kathy's cars and had put a bullet hole in the other vehicle.

For beating Angie, the State charged Balfour with battery resulting in bodily injury as a Class A misdemeanor, disorderly conduct as a Class B misdemeanor,[7] carrying a handgun without a license as a Class A misdemeanor,[8] criminal mischief as a Class B misdemeanor,[9] and criminal recklessness as a Class B misdemeanor[10] under cause number 18D04–9806–CM–213 (hereinafter "CM–213"). For the shooting incident outside Kathy's house, the State charged Balfour with disorderly conduct as a Class B misdemeanor, carrying a handgun without a license as a Class A misdemeanor,[11] criminal mischief as a Class B misdemeanor, and criminal recklessness as a Class B misdemeanor under cause number 18D04–9806–CM–214 (hereinafter "CM–214"). The State filed all of those charges on June 17, 1998.

1. Ind.Code § 35–42–2–1(a)(1)(A).

2. Ind.Code § 35–45–1–3(1).

3. Ind.Code § 35–43–1–2(a)(1).

4. Ind.Code § 35–42–2–2(b)(1).

5. The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."

6. Balfour also claims that his right to counsel under Article I, section 13 of the Indiana Constitution was violated. However, Balfour

provided no separate argument analyzing his right under the Indiana Constitution. Therefore, we address only his federal constitutional claim. *See Poynter v. State*, 749 N.E.2d 1122, 1125 n. 4 (Ind.2001).

7. Ind.Code § 35–45–1–3(1).

8. Ind.Code § 35–47–2–1.

9. Ind.Code § 35–43–1–2(a)(1).

10. Ind.Code § 35–42–2–2(b)(1).

11. Ind.Code § 35–47–2–1.

At an initial hearing on July 20, 1998, Balfour appeared without counsel. The trial court advised Balfour of his rights, the charges pending against him, and the penalties for the offenses. During those advisements, the trial court made the following statements regarding counsel:

Among your constitutional and statutory rights is the right to counsel. You should have an attorney within twenty days from this date in this felony in order that your attorney may best represent you. Those of you who are charged with misdemeanors, you need to have an attorney within ten days from this date. The reason for the time constraints is there are certain defenses which might be raised for you, but they need to be done in a timely way or you give up those defenses. **The court would prefer that you be represented by an attorney. However, you do have the right to represent yourself. If you come in here and attempt to represent yourself as your own attorney, you're bound by the same rules of criminal procedure as is any attorney and no one in the courtroom would be able to assist you.** If you can't afford an attorney, the Court will appoint one for you at public expense. If, however, you have any money, means or credit whereby you can retain your own lawyer, you are expected to do that if you want a lawyer.

(Tr. at 4–5.) (Emphasis added.) At the end of the hearing the trial court set Balfour's trial for October 20, 1998 and told Balfour to "[b]e back with or without an attorney ready for trial." (Tr. at 10.)

On September 11, 1998, Attorney Jack Quirk filed his appearance as Balfour's counsel. Quirk filed documents with the court on Balfour's behalf. However, Quirk withdrew as Balfour's counsel on May 20, 1999 because Balfour had hired another attorney to represent him.

Attorney Jill Gonzalez appeared at a counsel hearing on June 22, 1999. According to the Chronological Case Summary, Gonzalez informed the trial court that Balfour's father had an appointment with her later that day. The trial court reset the hearing for one week later. Neither Gonzalez nor any other attorney appeared for Balfour at the hearing a week later. In addition, Balfour did not appear at that hearing because he was being held in jail on a charge of murdering Angie.

At a counsel hearing on July 13, 1999, Balfour again appeared without counsel. At that hearing the following exchange occurred:

Court: Okay, why don't you have an attorney?

Balfour: I'm planning on it. They should be paid—I plan on paying them the 17th.

Court: Pardon me?

Balfour: We plan on paying my attorney that I'm planning to hire the 17th.

Court: Have you talked to him?

Balfour: Yes.

Court: Who is it?

Balfour: It's going to be Mick Alexander.

Court: Okay. And you're going to pay him on the 17th?

Balfour: Yes.

(Tr. at 16.) At a counsel hearing on January 25, 2000, Balfour informed the court that he had hired Michael Alexander as his attorney, that he had discussed the charges under CM–213 and CM–214 with Alexander, and that Alexander was "going to take care of these" for him. (Tr. at 21.)

On January 26, 2000, Alexander filed an appearance as Balfour's counsel. Over the course of a year, Alexander requested and

received five continuances of Balfour's trials due to Balfour's impending murder trial in another courtroom. On March 7, 2001, the trial court set Balfour's trial for September 11, 2001. Alexander did not appear on that day, and the Department of Correction did not transport Balfour to the court. Consequently, the trial court reset Balfour's trial for December 11, 2001. Then, on October 3, 2001, Alexander filed a motion to withdraw as Balfour's counsel in CM–213 because "we have concluded our participation in the defendant's case and ... the defendant is incarcerated for 30 years for murder." [12] (Appellant's App. at 66.) The trial court granted Alexander's motion to withdraw.

At a hearing on October 30, 2001, Balfour appeared without counsel. The trial court confirmed the trial date for CM–213 and CM–214 was December 11, 2001. In addition, the following discussion of Balfour's lack of counsel occurred:

State: Neither one of you have a lawyer right now. Is that right?

Balfour: Right.

\* \* \* \* \* \*

State: ... Judge, the thing that I would suggest we do, just because—[Balfour] filed a Notice of Alibi through Jack Quirk awhile back. It's a misdemeanor. Set it for bench trial. Let me petition the witnesses. Let me get them in. Let's get it done.

Court: Alright. Give me a trial date.

Reporter: Are you going to take up the issue of counsel?

State: Judge, as far as I'm concerned, I think a public defender has been denied and let's go to trial. Let's be done with it.

Court: Okay. This is just a misdemeanor, so it's not a ... bench trial? Are we just going to set both of them down as bench trials?

State: That's fine.

Court: Okay.

State: I mean, if we're going to do it tomorrow, I'll come in and do it tomorrow. I don't care. I mean he's got a situation he needs to get his stuff, he needs to get this cleared ...

Court: They're set for December what?

Reporter: December 11th at 1:30.

State: Okay. I'd suggest letting him go back so he can get back in what he's doing.

Court: It's alright by me.

State: And then they can issue another transport order. Because otherwise, he would have to sit here for another month waiting on that, a month and a half, I guess.

Court: Is Jack defending him?

State: No, he has no attorney.

Court: No attorney. Okay. Set it down.

(Tr. at 25–30.)

On December 10, 2001, Attorney Renee Conley filed an appearance under both cause numbers and filed motions for a continuance. The trial court denied the motions for continuance. When the trial court denied those motions, Conley filed motions to withdraw her appearance because she had not had adequate time to prepare for trial. The trial court granted Conley's motion to withdraw.

On December 11, 2001, Balfour appeared for trial without counsel. Before the trial commenced, Balfour asked the court to provide him with legal representation. The court denied Balfour's request, stating: "Your motion is not timely. You have repeatedly told this Court that you

---

**12.** While Balfour was charged with murder, he was, in fact, convicted of voluntary manslaughter. *See Balfour v. State,* 762 N.E.2d 251 (Ind.Ct.App.2001), *trans. denied.*

would obtain counsel. You haven't done it. We're here and we're going to have a trial today." (Tr. at 34.) The court proceeded with Balfour's trial.

The court found Balfour guilty of battery resulting in bodily injury as a Class A misdemeanor under CM–213. The court dismissed the remainder of the charges against Balfour under CM–213 when the State conceded that they were duplicate charges. Under CM–214, the trial court found Balfour guilty of disorderly conduct as a Class B misdemeanor, criminal mischief as a Class B misdemeanor, and criminal recklessness as a Class B misdemeanor. Also under CM–214, the trial court found Balfour not guilty of carrying a handgun without a license. For the battery, the trial court sentenced Balfour to one year in the Department of Correction, which was to be served consecutive to his sentences in CM–214 and 18D02–9905–CF–31 (the voluntary manslaughter conviction). For the other convictions collectively, the trial court sentenced Balfour to six months in the Department of Correction, which was to be served consecutive to the sentences imposed in CM–213 and 18D02–9905–CF–31. This appeal ensued.

### DISCUSSION AND DECISION

 The Sixth Amendment right to counsel protects a defendant's right to a fair trial. *Poynter v. State*, 749 N.E.2d 1122, 1125 (Ind.2001). In fact, it may be the most important right that a defendant has because most defendants do not have the legal skills necessary to protect all of the other rights that professional counsel can protect. *Id.* at 1125–26. Because the Sixth Amendment right is fundamental, we presume that a defendant would not want to waive it. *Id.* Consequently, before a defendant may proceed *pro se*, the trial court must inform the defendant of the "dangers and disadvantages of self-repre-

sentation," and the trial court must determine that the defendant is making a "voluntary, knowing, and intelligent waiver" of his right to counsel. *Id.* at 1126. We review *de novo* a trial court's finding that the defendant waived the right to counsel. *U.S. v. Hoskins*, 243 F.3d 407, 410–11 (7th Cir.2001).

 In this case, Balfour did not assert his right to proceed *pro se;* rather, he appeared on the day of trial without counsel after having previously been represented by a number of different attorneys. The trial court refused Balfour's trial-day request for counsel and required him to proceed *pro se.* Balfour argues that his conduct leading up to his trial was not sufficient to waive his right to counsel.

 A verbal waiver of a defendant's right to counsel is not always necessary. *Id.* at 410. In some circumstances, a trial court may infer from a defendant's conduct that he waived his right to counsel. *See, e.g., id.* at 410–11. "[S]o long as the ... court has given a defendant sufficient opportunity to retain the assistance of ... counsel, defendant's actions which have the effect of depriving himself of ... counsel will establish a knowing and intentional choice." *Id.* The United States Supreme Court has not set out a specific test for when a defendant's conduct is sufficient to waive his Sixth Amendment right to counsel. *Poynter*, 749 N.E.2d at 1127. Consequently, our supreme court adopted a four-factor test developed by the Seventh Circuit for determining whether a defendant's choice to appear for trial without counsel was knowing and intelligent. *Id.* at 1128.

The four factors in the test are: "(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defen-

dant, and (4) the context of the defendant's decision to proceed *pro se*." *Id.* at 1127–28. Under the fourth factor, the trial court should consider "whether the defendant's decision appears tactical or strategic in nature or seems manipulative and intending delay, inferring knowledge of the system and understanding of the risks and complexities of trial from more deliberative conduct." *Id.* at 1128 n. 6.

In *Poynter,* our supreme court applied the four-factor test to a situation in which the State claimed the defendant, by his conduct, had waived his right to counsel. There, the defendant was advised of his trial rights and told that he would have to proceed *pro se* if he failed to hire counsel; however, the trial court did not advise the defendant of the dangers and disadvantages of proceeding *pro se.* The supreme court stated that the lack of advisement "weighs heavily against finding a knowing and intelligent waiver." *Id.* As for the other three factors, the supreme court stated:

> We can find nothing in the record that either directly or inferentially supports the notion that the defendant may have independently understood the dangers and disadvantages of self-representation. The defendant had prior misdemeanors, but it is not known whether these prior offenses resulted in trials or pleas or what sentences were received. The defendant's background and experience—twenty-five years old, ninth grade education, employed—tilts us neither towards finding or not finding waiver. Finally, while there is evidence that the defendant chose to work and sleep rather than take the time to hire an attorney, his conduct did not result in gross delays or clearly appear to intend manipulation of the process.

*Id.* Consequently, the supreme court held that "[t]he facts and circumstances of this particular case do not warrant finding a knowing and intelligent waiver." *Id.*

Here, the trial court repeatedly inquired about Balfour appearing *pro se* at hearings, and Balfour repeatedly assured the trial court that he would hire counsel to represent him at trial. However, the trial court did not have a lengthy discussion with Balfour about the dangers and disadvantages of self-representation. The trial court merely told Balfour at the time of his initial hearing in July of 1998:

> The court would prefer that you be represented by an attorney. However, you do have the right to represent yourself. If you come in here and attempt to represent yourself as your own attorney, you're bound by the same rules of criminal procedure as is any attorney and no one in the courtroom would be able to assist you.

(Tr. at 4–5.) The fact that Balfour did not get a more detailed advisement of the dangers and disadvantages of self-representation "weighs heavily against finding a knowing and intelligent waiver" of the right to counsel. *Poynter,* 749 N.E.2d at 1128.

Because the Record does not contain a presentence report, we do not know the extent of Balfour's criminal history or his education level. We do know that Balfour was twenty-one years old at the time he was charged and he was 24 years old by the time of his trial. By the time of this trial, Balfour knew what a trial entailed because in the preceding year he had been tried for murder. Finally, while Balfour hired and dismissed a number of attorneys over the course of three years, there is no evidence that Balfour was being "manipulative and intending delay." *Id.* at 1128 n. 6. Balfour's failure to obtain counsel had not led to gross delays in his trial. Rather, much of the delay occurred because his attorney Alexander requested continu-

ances during Balfour's murder trial. These factors do not weigh so heavily in favor of finding that Balfour knowingly and intelligently waived his right to counsel that they can overcome the fact that Balfour was not given an adequate advisement regarding the dangers and disadvantages of self-representation. *See Poynter,* 749 N.E.2d at 1128.

We reaffirm that a defendant may not deliberately discharge his counsel on the eve of trial as a tactic for delaying his trial. *See, e.g., Moreno v. State,* 760 N.E.2d 240, 242 (Ind.Ct.App.2001) ("[W]hile a defendant charged with a criminal offense is allowed representation by counsel, he may not through a deliberate process of discharging retained or assigned counsel whenever his case is called for trial disrupt sound judicial administration by such delaying tactics."). Nevertheless, given the facts of this case and the available precedent, we have no choice but to reverse Balfour's conviction and remand for a new trial. *See Poynter,* 749 N.E.2d at 1128–29; *Moreno,* 760 N.E.2d at 243.

Reversed and remanded.

RILEY, J., and ROBB, J., concur.