Scott L. MALONEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 92S03–9708–CR–447.

Supreme Court of Indiana.

Aug. 18, 1997.

Donald C. Swanson, Jr., Fort Wayne, for Appellant.

Jeffrey Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

Appellant Scott L. Maloney pled guilty in 1988 to operating a vehicle while intoxicated, a class A misdemeanor.[1] Maloney now claims that the trial court did not adequately inform him of the rights he would waive by pleading guilty, in violation of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The court hearing his post-conviction petition denied relief. A divided panel of the Court of Appeals reversed and granted Maloney a new trial. *Maloney*

---

1. Ind.Code Ann. § 9–11–2–2 (West Supp.1990) (*repealed, now codified at* § 9–30–5–2 (West 1992)). Maloney was also charged with operating a vehicle while having a blood alcohol content greater than .10%, Ind.Code Ann. § 9–11–2–

1 (*repealed, now codified at* § 9–30–5–1 (West 1992)), a class C misdemeanor, but this charge was dropped when he plead guilty to the greater offense.

*v. State,* 673 N.E.2d 519 (Ind.Ct.App.1996). We grant transfer and affirm the decision of the post-conviction court.

### Facts

On Saturday evening, January 30, 1988, Scott L. Maloney ran a stop sign in Whitley County and collided broadside into an automobile driven by Tiffany Hesting. Ms. Hesting suffered minor injuries, and Maloney suffered cuts and bruises to his face, for which he was transported to Whitley County Hospital. A blood sample taken at the hospital revealed Maloney's blood alcohol content (BAC) to be .13%.

Maloney appeared for his initial hearing before Judge Patricia McNagny on April 25, 1988. Judge McNagny orally instructed Maloney and other defendants in the courtroom that day en masse. She told them of their rights to have counsel present at all stages of their proceedings, to have counsel appointed if indigent, to proceed pro se if counsel was not desired, to elect not to testify against themselves, and to a speedy trial if requested. The court also supplied Maloney with a waiver of rights form, which stated the following:

*WAIVER OF RIGHTS—*
*MISDEMEANOR*
*CHARGES*

READ VERY CAREFULLY—IF UNCERTAIN AS TO ANY ITEM, ASK THE JUDGE TO EXPLAIN

. . . .

2. You have the following rights to:

   A. Engage counsel;

   B. A reasonable continuance to engage counsel to subpoena witnesses;

   C. Have process issued by the Court, without expenses to him, to compel the attendance of witnesses in his behalf;

   D. Testify or not to testify in his own behalf;

   E. A trial by jury;

   F. Appeal; and

3. You should understand that if you plead guilty, you are voluntarily *waiving* your rights to:

   A. Public and speedy trial by jury,

   B. Confront and cross-examine witnesses against him,

   C. Compulsory process for obtaining witnesses in his favor, and

   D. Require State to prove beyond a reasonable doubt at trial at which he is not compelled to testify against himself.

4. You should further understand that if you are charged with a misdemeanor *traffic* offense, this Court will, if you plead guilty, send a record of your conviction to the motor vehicle commission of Indiana or of the State where you received your license to drive, to become part of your driving record.

. . . .

HAVE YOU READ EVERY PORTION OF THIS WRITTEN WAIVER?

DO YOU UNDERSTAND EVERYTHING IN THIS WAIVER?

IF YOU HAVE ANY QUESTIONS, OR DO NOT UNDERSTAND ANY PART OF THIS WAIVER, ASK THE JUDGE FOR AN EXPLANATION, *BEFORE* YOU SIGN THIS WAIVER.

I do hereby acknowledge that I fully understand all of the rights, warnings and information which are set out in this Waiver. I do hereby waive these rights without first being addressed by the Judge and formally advised of these rights.

(P.C.Supp.R. at 1 (capitalization and emphasis in original).) Maloney signed this form and pled guilty to the charges. As Maloney's driving record up to that point had been exemplary, the court fined him $200 plus $103 in costs, gave him a probationary driver's license for employment-related use, and sentenced him to six months in jail (suspended except for four days, which he was allowed to serve over a weekend).

Things went downhill thereafter. In 1992 Maloney was convicted of a second OWI offense by the Whitley Superior Court, and he was facing a third OWI offense in Hendricks County at the time of his post-conviction hearing in this case. Maloney admits he seeks post-conviction relief to avoid the habitual traffic law violator penalty, *see* Ind.

Code App. § 9–30–10–4, –5 (West 1992 & Supp.1996), that awaits him in Hendricks County because of his prior OWI convictions. (*See* P.C.R. at 49–50.)

At the post-conviction hearing in the present case, Maloney testified that he did not believe he had been informed of his rights in Judge McNagny's court back in 1988. (P.C.R. at 45–48, 52–53.) After reviewing the record and listening to a recording of that proceeding, the post-conviction court concluded that the trial court had sufficiently advised Maloney of his rights, and that Maloney had knowingly and voluntarily waived those rights. (P.C.R. at 17–18.)

### Waiver of Rights for Misdemeanants

Indiana Code § 35–35–1–2(a) requires a court to determine a number of things before it accepts a defendant's guilty plea. Subsubsection (2) requires a court to determine that the defendant

has been informed that by his plea he waives his rights to:

(A) a public and speedy trial by jury;

(B) confront and cross-examine the witnesses against him;

(C) have compulsory process for obtaining witnesses in his favor; and

(D) requires the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself; . . . .

Ind.Code Ann. § 35–35–1–2(a)(2) (West 1986). Subsection (b) of this code section allows the court to inform misdemeanor defendants of these rights in writing, rather than by oral colloquy. Ind.Code.Ann. § 35–35–1–2(b) ("A defendant in a misdemeanor case may waive the rights under subsection (a) by signing a written waiver.")

■ Maloney relies on the holding in *Boykin* that a defendant's plea of guilty must be intelligent and voluntary, which includes awareness that the plea of guilty waives the defendant's privilege against self-incrimination, his right to a jury trial, and his right to confront his accusers. 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). The rights mentioned in Maloney's waiver form, which adhered to the requirements of Indiana Code § 35–35–1–2, included the

three "*Boykin* rights." Thus, this case turns on whether a misdemeanor defendant's signature on a waiver form, as allowed by Indiana Code § 35–35–1–2, adequately demonstrates his awareness of, and thus his voluntary and intelligent waiver of, his *Boykin* rights.

Panels of the Court of Appeals have differed on whether a misdemeanant's signature on an advisement form is enough "evidence on the face of the record" to indicate an intelligent and voluntary waiver of *Boykin* rights. For example, in *Beldon v. State,* 657 N.E.2d 1241 (Ind.Ct.App.1995), *trans. denied,* the court stated,

Our review of the record reveals that prior to pleading guilty, Beldon signed a Waiver of Rights form which indicated that by pleading guilty, he knowingly and voluntarily waived his constitutional and statutory rights [listed in § 35–35–1–2(a)(2) ]. This is sufficient to establish that Beldon was advised of his rights, and knowingly and voluntarily waived them.

*Id.* at 1245; *see also Spencer v. State,* 634 N.E.2d 500, 501 (Ind.Ct.App.1993) ("The trial judge is not required personally to advise the defendant of the constitutional rights he is waiving if those rights are recited in the plea agreement."). Another panel has stated that § 35–35–1–2(b) "permits those advisements in I.C. 35–35–1–2(a) *which are not of constitutional dimension . . .* to be given in writing to misdemeanant defendants." *Melton v. State,* 611 N.E.2d 666, 668 (Ind.Ct.App.1993) (emphasis added, citation omitted). Other cases indicate that a misdemeanant's signature on an adequate written advisement, without personal oral inquiry by the trial court, is not enough to demonstrate that the defendant "knew" what he was giving up by pleading guilty. *See, e.g., Hunt v. State,* 487 N.E.2d 1330 (Ind.Ct.App.1986).

■ We conclude that the form signed by Maloney in this case clearly and personally advised him of his statutory and constitutional rights. As Judge Shields, who authored *Hunt,* has more recently stated, "A record which contains the necessary advice in writing is sufficient to establish that the waiver is

knowing." *Eldridge v. State*, 627 N.E.2d 844, 847 (Ind.Ct.App.1994).

 *Boykin* requires that the record show a defendant knew he was giving up certain rights by pleading guilty. Indiana's statutes require a public and oral dialogue with defendants pleading guilty to felonies; a written waiver listing those rights signed by a misdemeanant speaks adequately. While further inquiry by the trial court is advantageous, *see Poore v. State*, 681 N.E.2d 204, 208 (Ind. 1997), *Boykin* does not require a court to engage a misdemeanor defendant in an oral colloquy to make sure he understands what he is signing, or a record to disclose a misdemeanant's ability to read and understand the waiver form he signs. *See White v. State*, 497 N.E.2d 893, 896–900 (Ind.1986) (oral advisement a matter of statute, not constitution).

A defendant challenging his guilty plea on appeal must plead specific facts from which a finder of fact could conclude by a preponderance of the evidence that his plea was involuntary or unintelligently made. *White*, 497 N.E.2d at 905. A signed waiver which meets the requirements of Indiana Code § 35–35–1–2(b) permits a court to find a voluntary and intelligent plea. The burden is on the challenger of the conviction to show that he could not read the advisements contained on the form, for example, or that his signature was produced by coercion or misapprehension.

At the post-conviction hearing, the only evidence pertaining to the advisement of rights that Maloney introduced was his belief that he was not informed of his right to a jury trial, to confront witnesses, or to use the subpoena power of the court. (P.C.R. at 38–39, 47.) He testified that had he known of his right to a jury trial and that subsequent offenses could qualify him as a habitual offender, he would not have knowingly, intentionally and voluntarily entered his guilty

plea. (*Id.* at 39.) The record reveals that Maloney was a high school graduate, that he now owns his own construction business, and that he could read at the time of the post-conviction hearing.[2] This raises a significant inference that at the time of his trial, then age twenty-four, Maloney had the ability to read. As Judge Garrard noted:

> What is missing from the record are any specific factual assertions by Maloney demonstrating that in some fashion he was misled or harmed by the written advisement and waiver that he was given, and that he signed, advising him of his rights to jury trial and to confront and cross examine the witnesses against him.

*Maloney v. State*, 673 N.E.2d 519, 521 (Ind. Ct.App.1996) (Garrard, J., dissenting).

### Conclusion

We agree with Judge Garrard's conclusion, "On this record I cannot say that the evidence leads unerringly to a conclusion opposite that reached by the post-conviction court." *Id.* Accordingly, we affirm.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.

---

2. The following exchange between the prosecutor and Maloney suggests Maloney's ability to read and understand written English:

> STATE: Sir, I'm going to show you an accident report that was compiled that day. Take a look at it. You ever seen that before?
> DEFENDANT: No.

> STATE: Never saw that before? Take a minute and look over the information. Is that a true and correct recitation of the facts that day?
> ....
> DEFENDANT: Yeah.
> (P.C.R. at 50–51.)