

**FILED**

Jun 21 2017, 8:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey K. Branstetter
Blanton, Branstetter & Pierce, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James A. Hart, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 21, 2017 <br><br> Court of Appeals Case No. <br> 59A01-1607-CR-1655 <br><br> Appeal from the Orange Superior Court <br><br> The Honorable R. Michael Cloud, Judge <br><br> Trial Court Cause No. <br> 59D01-1507-CM-680 |

**Pyle, Judge.**

## Statement of the Case

[1]     James Hart ("Hart") appeals his conviction by jury of Class A misdemeanor invasion of privacy. Prior to trial, Hart told the trial court that he did not want court-appointed counsel, but then he failed to obtain his own counsel in the

months that followed. A week prior to trial, Hart filed a motion for a continuance, requesting additional time to obtain counsel. The trial court denied the motion, and Hart subsequently represented himself at trial. On appeal, Hart argues that the trial court erred by trying him without counsel because he did not knowingly, intelligently, and voluntarily waive his right to counsel. The State argues that, even though Hart did not verbally waive his right to counsel, he waived his right through his conduct of failing to obtain a lawyer in a timely manner. Because we find that the trial court did not properly advise Hart of the dangers of representing himself, we agree with Hart that he did not knowingly, intelligently, and voluntarily waive his right to counsel verbally or through his conduct. Accordingly, we reverse Hart's conviction and remand to the trial court for a new trial.

We reverse and remand.

# Issue

Whether Hart knowingly, intelligently, and voluntarily waived his right to counsel.

# Facts

On July 30, 2015, Hart was charged with Class A misdemeanor invasion of privacy for violating a protective order that prohibited him from visiting the French Lick Resort, his wife's place of employment.

On September 14, 2016, the trial court held an initial hearing on Hart's charge. At the hearing, Hart appeared and executed a document entitled "Waiver of

Appearance and Written Report of Initial Hearing." (App. 110). The waiver provided:

> . . . the Defendant herein is now informed of his/her constitutional rights, which rights are as follows:
>
> 1. To retain counsel, and if he intends to do so he must do so within . . . [t]en days . . . because there are deadlines for filing motions and raising defenses, and if those deadlines are missed the legal issues and defenses that could have been raised are waived.
>
> 2. To assigned counsel at no expense to him if he is indigent.

(App. 110). Hart signed another section of the waiver that provided: "I, the defendant herein, do hereby certify and state that I have read and understand this Appearance and Written Report of Initial Hearing . . . ." (App. 111). The trial court acknowledged that Hart had signed the waiver but did not ask whether Hart intended to retain an attorney or was indigent.

[5] At the next pre-trial conference, on January 19, 2016, Hart and the trial court engaged in the following exchange:

> [COURT]: Are you going to represent yourself at trial?
>
> [HART]: Oh, I'll do what ever (sic) I want. I don't got to answer that today, do I?
>
> [COURT]: Well, I just didn't know if you were waiving the right to counsel or you, you wanted me to consider appointing a lawyer or?
>
> [HART]: I don't, I don't need your monkeys, no thank you. . . .

(Tr. Vol. 2 at 6-7). The trial court then asked Hart how many days were necessary for his jury trial. Hart and the court agreed on the number of days,

and the trial court set the trial for June 8, 2016. The court also asked Hart if he wanted a final pre-trial conference, and Hart responded "Oh, heck no. We're not coming to no agreement with this right here. . . . [the Prosecutor]'s too chicken to fight real criminals so she comes after us hard working people. . . . So let's rock." (Tr. Vol. 2 at 12).

[6] Subsequently, one week before the scheduled jury trial, Hart filed, among other motions, a motion to continue the trial. The trial court held a hearing on the motions the day before the scheduled trial. At that hearing, Hart requested a continuance because two of his witnesses were unable to appear on the originally scheduled trial date due to medical complications and because the trial conflicted with a work assignment he had received. In addition, Hart said "I've recently tried to seek out legal counsel, [] and stuff like that and been denied because everybody's too booked up. So, you know they say they need more time and financially I haven't been able to pull it together, you know, until recently." (Tr. Vol. 3 at 12). As a result, Hart requested more time to obtain counsel. The trial court denied the motion, noting that it was the day before the trial, and the court had already summoned the seventy-five potential jurors. The trial court also noted that Hart had received notice of the trial almost six months previously and could have requested a continuance at any point before May 27 when the court had summoned the jurors.

[7] Over the next three days, the trial court conducted the jury trial. Hart appeared pro se, and the trial court never questioned his lack of representation. At the conclusion of the trial, the jury found Hart guilty as charged. The trial court

sentenced Hart to one (1) year with all but sixty (60) days suspended to probation. Hart now appeals.

# Decision

On appeal, Hart argues that he did not voluntarily, knowingly, and intelligently waive his constitutional right to counsel and, accordingly, the trial court violated that right by conducting his trial before he could obtain counsel. In response, the State argues that even if Hart did not verbally waive his right to counsel, he implicitly waived that right through his conduct of failing to obtain counsel during the six months after he received notice of his charges and his trial date.

A criminal defendant's right to counsel is a fundamental individual right protected by the Sixth Amendment of the United States Constitution. *Leonard v. State*, No. 71S00-1509-LW-539 (Ind. May 2, 2017). "'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.'" *Poynter v. State*, 749 N.E.2d 1122, 1125-26 (Ind. 2001) (quoting *United States v. Cronic*, 466 U.S. 668, 684 (1984)). Accordingly, it is well-settled that when a defendant proceeds to trial without the benefit of counsel, the record must reflect that the right to counsel was voluntarily, knowingly, and intelligently waived. *Brickert v. State*, 673 N.E.2d 493, 495 (Ind. Ct. App. 1996), *reh'g denied*, *trans. denied*. Whether there has been an intelligent waiver depends on the "'particular facts and circumstances surrounding that case, including the

background, experience, and conduct of the accused.'" *Poynter*, 749 N.E.2d at 1127 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). It is the responsibility of the trial judge to determine whether there is an intelligent and competent waiver, and it is "'fitting and appropriate for that determination to appear on the record.'" *Id.* (quoting *Johnson*, 304 U.S. at 465). There are no prescribed "talking points" the court is required to use; however, making a defendant aware of his constitutional right to counsel is insufficient. *See id.* at 1126 ("There are no prescribed talking points the court is required to include[.]"); *Eaton v. State*, 894 N.E.2d 213, 217 (Ind. Ct. App. 2008), *trans. denied*. The trial court must also tell the defendant of the "'dangers and disadvantages of self-representation.'" *Poynter*, 749 N.E.2d at 1126 (quoting *Faretta v. California*, 422 U.S. 806 (1975)).

[10] We review the trial court's conclusion that a defendant knowingly and voluntarily waived the right to counsel de novo. *R.W. v. State*, 901 N.E.2d 539, 543 (Ind. Ct. App. 2009). We also note that a "strong presumption exists against waiver of the constitutional rights to counsel." *Eaton*, 894 N.E.2d at 217 (quoting *Mitchell v. State*, 417 N.E.2d 364, 369 (Ind. Ct. App. 1981)).

[11] The complicating factor here is that Hart never asserted his right to self-representation, which would have raised the question of whether he intended to waive his right to counsel. He denied the trial court's offer of court-appointed counsel when he said "I don't need your monkeys," but he never stated that he intended to represent himself instead. (Tr. Vol. 2 at 7). To the contrary, at his hearing on his motion to continue, Hart told the court that he had tried to

obtain a lawyer and wanted more time to do so because all the lawyers he had spoken to had been booked. Then, later at the hearing, he reiterated "I told you I needed time to get legal counsel[,] too[.] I was still working on that, so." (Tr. Vol. 3 at 43). Accordingly, Hart never verbally asserted his right to self-representation or said that he did not want counsel.

[12] Nevertheless, the State argues that Hart implicitly waived his right to counsel by failing to obtain counsel even though he had received notice of his trial date several months prior to trial. In support of this argument, the State cites *Brickert v. State*, 673 N.E.2d 493, 496 (Ind. Ct. App. 1996), *reh'g denied*, *trans. denied*, in which we held that Brickert had waived his right to counsel by failing to obtain counsel after the trial court had granted him a continuance to do so. We do not find our holding in *Brickert* relevant because our supreme court later recognized in *Poynter* that *Brickert* conflicted with other precedent and clarified the issue of waiver of the right to counsel. *See Poynter*, 749 N.E.2d at 1126-27 (stating that it would "take [the] opportunity to clarify" the issue of waiver of the right to counsel because *Brickert* and other cases provided "inconsistent precedent").

[13] In *Poynter*, Poynter had told the trial court that he intended to hire an attorney to represent him. *Id.* at 1124. A month and a half later, the trial court had continued one pre-trial conference because Poynter had not yet obtained an attorney. *Id.* Then, at the next pre-trial conference, Poynter had appeared without an attorney and had said that he had been working seven days a week, twelve hours a day, and had been too tired to talk to an attorney. *Id.* at 1125. The court had set the case for a bench trial and told Poynter that "with or

without an attorney you need to be prepared for a trial on this date." *Id.* Poynter had agreed but had appeared on the trial date without an attorney. *Id.* Neither Poynter nor the trial court had commented on his lack of attorney, and the trial court had conducted the trial with Poynter representing himself. *Id.*

[14] On appeal to the supreme court, Poynter argued that he had not waived his right to an attorney, and the trial court had therefore erred in trying him without counsel. *Id.* at 1124. In response, the State argued that Poynter had waived his right to an attorney through his conduct of telling the court that he would hire an attorney and then appearing without an attorney. *Id.* In its opinion, the supreme court recognized that a defendant may waive his right to an attorney through his conduct. *Id.* at 1126. However, the supreme court reaffirmed that such a waiver must still be made knowingly, intelligently, and voluntarily. *See id.* To determine whether Poynter's waiver had been knowing and intelligent, the court considered the following four factors established by the Seventh Circuit Court of Appeals: "'(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se.'" *Id.* at 1127-28 (quoting *U.S. v. Hoskins*, 243 F.3d 407, 410 (7th Cir. 2001)).

[15] Ultimately, the supreme court concluded that Poynter had not knowingly and intelligently waived his right to counsel because there was nothing in the record to indicate that the trial court had advised Poynter of the dangers and

disadvantages of self-representation or that Poynter might have independently understood the dangers and disadvantages of self-representation. *Id.* at 1128. The court commented that the trial court's "lack of advisement weigh[ed] heavily against finding a knowing and intelligent waiver." *Id.*

[16] Since Poynter, Indiana courts have likewise held that in order for a defendant to knowingly and intelligently waive his right to counsel through his conduct, the trial court must warn the defendant of the dangers and disadvantages of self-representation. *See Gilmore*, 953 N.E.2d at 592 (finding that, even though Gilmore had caused five court-appointed attorneys to withdraw, he had not waived his right to counsel and noting that a knowing and intelligent waiver of the right to counsel "include[d] a warning on the dangers and disadvantages of self-representation established in an on-the-record hearing where specific findings [were] made"); *Kowalskey*, 42 N.E.3d at 106 (concluding that Kowalskey had not waived his right to counsel through his conduct because there were no findings regarding whether the trial court had given Kowalskey the required "warnings regarding the dangers and disadvantages of self-representation").

[17] In light of *Poynter, Gilmore*, and *Kowalskey*, we conclude that Hart cannot have knowingly and intelligently waived his right to counsel absent an advisement regarding the dangers and disadvantages of self-representation. Because Hart never received such an advisement, we conclude that the trial court erred in

trying him without counsel. We reverse Hart's conviction and remand to the trial court for a new trial.[1]

[18] Reversed and remanded.

[19] Baker, J., and Mathias, J., concur.

---

[1] Notably, a trial court need not advise a defendant of the dangers and disadvantages of representation if the trial court concludes that the defendant has "forfeited" his right to counsel through his conduct. *See United States v. Goldberg*, 67 F.3d 1092, 1099-1101 (3rd Cir. 1995) (discussing the differences between "waiver" of the right to counsel and "forfeiture" of the right to counsel). However, the State does not allege here that Hart forfeited his right to counsel. Moreover, we conclude that his conduct was not the type of abusive or "extremely dilatory" conduct to which the doctrine of forfeiture applies. *See Gilmore v. State*, 953 N.E.2d 583 (concluding that Gilmore's conduct, which caused five different court-appointed attorneys to withdraw from representing him and delayed his trial for approximately four years "was not of the kind often associated with a finding of forfeiture of the right to counsel"); *McLeod*, 53 F.3d at 326 ("[U]nder certain circumstances, a defendant who is abusive toward his attorney may forfeit his right to counsel.").