## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 11 2018, 9:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Duane Lamar Herron,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 11, 2018

Court of Appeals Case No.
71A03-1711-CR-2741

Appeal from the St. Joseph
Superior Court

The Honorable Paul E. Singleton,
Magistrate

Trial Court Cause No.
71D06-1708-CM-3538

**Bailey, Judge.**

# Case Summary

[1] Duane Lamar Herron ("Herron") appeals his conviction for Criminal Mischief, as a Class B misdemeanor.[1] We affirm.

# Issues

[2] Herron presents two issues for review:

    I.    Whether he voluntarily, knowingly, and intelligently waived his right to counsel; and

    II.    Whether sufficient evidence supports his conviction.

# Facts and Procedural History

[3] On May 27, 2017, Herron confronted his half-brother, David Workman ("Workman"), about $80.00 that Workman owed Herron for performing landscaping services. Dissatisfied with Workman's protestation that he did not have the funds to pay Herron, Herron took a hatchet from his backpack and broke out the windshield of Workman's truck. Workman summoned police and South Bend Police Department Officer Anne Hayes ("Officer Hayes") responded. Officer Hayes observed damage to Workman's truck.

---

[1] Ind. Code § 35-43-1-2(a).

[4] On August 16, 2017, the State charged Herron with Criminal Mischief. He was convicted in a bench trial conducted on November 8, 2017, and sentenced to pay $350.00 in restitution. Herron now appeals.

# Discussion and Decision

## Waiver of Right to Counsel

[5] Herron, who represented himself at the bench trial, contends that he did not voluntarily, intelligently, and knowingly waive his right to counsel. Herron argues that the trial court "made virtually no inquiry" regarding Herron's self-representation decision and that "the record does not demonstrate any acknowledgment that Herron actually understood anything about the trial process." Appellant's Brief at 10.

[6] The Sixth Amendment, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to counsel before he may be tried, convicted, and punished, and this protection also encompasses a right of self-representation. *Hopper v. State*, 957 N.E.2d 613, 617 (Ind. 2011) (citing *Faretta v. California*, 422 U.S. 806 (1975)). A defendant who waives his right to counsel must knowingly and intelligently forgo the relinquished benefits, and he should be made aware of the dangers and disadvantages of self-representation. *Id.* at 618. "There is no particular formula or script that must be read to the defendant." *Id.* The information that must be provided depends on a range of case-specific factors, including the defendant's education or

sophistication, the complexity of the charge, and the stage of the proceeding. *Id.* (citing *Iowa v. Tovar*, 541 U.S. 77 (2004)).

[7] A court determining whether a waiver of trial counsel was made voluntarily and intelligently must consider (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence of record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. *Id.* We review the trial court's conclusion that a defendant knowingly and voluntarily waived the right to counsel de novo. *Hart v. State*, 79 N.E.3d 936, 940 (Ind. Ct. App. 2017).

[8] On October 18, 2017, Herron signed a "Waiver of Right to Attorney and Acknowledgment of Dangers of Self-Representation" form. (App. Vol. II, pg. 19.) In relevant part, the written advisement provided:

> I know I have the right to a lawyer and the right to be my own lawyer. The Judge has warned me that it is dangerous and almost always unwise to be my own lawyer, because I will be held to the same standards of law and procedure as a lawyer and will not get any special treatment from the Court. The Judge has warned me that I may hurt my own case, and that the State has an experienced lawyer.

(App. Vol. II, pg. 19.) The waiver form additionally included an advisement that a lawyer possesses skills in such matters as obtaining and questioning witnesses, gathering documentation, recognizing objectionable evidence, and making favorable statements in opening and closing. Herron acknowledged

that he reads English and is mentally sound.  He filled in a blank to indicate that he had 16 years of education and checked a box to indicate that he was somewhat familiar with the rules of evidence and procedure.

[9]     On the day of his bench trial, Herron signed a waiver document including the language:

> I UNDERSTAND MY RIGHT TO HAVE OR REFUSE A LAWYER.
>
> I understand that I have the right to a lawyer and the right to get time to talk to one.  I understand that if I can't afford to hire a lawyer and am charged with a misdemeanor, a public defender could be appointed for me at little or no charge.  I understand that I have the right to represent myself.  I understand that an attorney is usually more experienced in plea negotiations and better able to identify and evaluate any potential defenses and evidentiary or procedural problems with the prosecutor's case.

(App. Vol. II, pg. 22.)  Above his signature, Herron checked a box indicating that he would represent himself.

[10]    At the outset of the bench trial, the trial court addressed Herron:

> I know that we went through this the last time we were here and the time before that and the time before.  But to get it on the record again, do you recall signing and dating on October 18th, 2017, a Waiver of a Right to an Attorney and the Dangers of Self-Representation sheet; is that correct, sir.

(Tr. at 4.)  Herron acknowledged that he had signed the waiver.  The trial court then explained to Herron some of the tasks for which he would be responsible

as his own attorney, emphasized that it would be in Herron's best interests to be represented by counsel, and reiterated that there would be "no problem" with appointment of a public defender, if Herron so desired. (Tr. at 5.) Herron stated that he would like to proceed without a lawyer.

[11] "If the record establishes that the defendant can read, the defendant's signing a written advisement can be sufficient to inform a defendant of his rights discussed in the advisement and to establish that the defendant waived those rights." *Belmares-Bautista v. State*, 938 N.E.2d 1229, 1231 (Ind. Ct. App. 2010) (citing *Maloney v. State*, 684 N.E.2d 488, 490 (Ind. 1997)). Herron does not deny that he signed written advisements; nor does he argue that he lacked ability to understand or appreciate the content. Rather, he faults the trial court for the brevity of the colloquy on the day of trial.

[12] It is apparent from the trial court's statement "we went through this the last time we were here and the time before that and the time before," Tr. at 4, that Herron's self-representation decision had been addressed previously. Because transcripts of the prior hearings were not submitted on appeal, we are not privy to the specific content. As such, we are not positioned to address the merits of Herron's specific claim that the trial court made virtually no inquiry into his decision. However, even without the pre-trial transcripts, the record supports a determination that Herron voluntarily, knowingly, and intelligently waived his right to counsel.

# Sufficiency of the Evidence

[13] Herron argues that the State failed to present sufficient evidence to support his conviction. More specifically, he points to an absence of documentary evidence of damage and Workman's ownership of the truck at issue.

[14] Pursuant to Indiana Code Section 35-43-1-2(a), "[a] person who recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent commits criminal mischief, a Class B misdemeanor."

[15] In reviewing a claim of insufficient evidence, we do not reweigh the evidence or assess the credibility of witnesses. *Leonard v. State*, 73 N.E.3d 155, 160 (Ind. 2017). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

[16] Workman testified that he owned a 2003 Chevy Silverado 3500 and that, in Workman's presence, Herron "pulled a hatchet out of his backpack and busted the windows out of my truck." (Tr. at 9.) He denied giving consent to Herron to break the windows. Officer Hayes testified that she responded to a call from Workman and observed a truck with a broken windshield and driver's side damage. There was no requirement that the State produce documentary

evidence. *See Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (a conviction can be sustained upon only the testimony of a victim-witness).

# Conclusion

The record supports the conclusion that Herron knowingly and voluntarily waived his right of representation by counsel. Sufficient evidence supports his conviction.

Affirmed.

Crone, J., and Brown, J., concur.