# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jul 27 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RONALD DAVIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1109-CR-459 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark Stoner, Judge
Cause No. 49G06-0801-MR-18561

**July 27, 2012**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Ronald Davis pleaded guilty pursuant to a plea agreement to four counts of felony murder, one count of class B felony conspiracy to commit robbery, and one count of class B felony unlawful possession of a firearm by a serious violent felon. The trial court sentenced Davis to an aggregate executed term of 245 years in prison. On appeal, Davis presents the following restated and consolidated issues for review:

1. Does the sentence violate the terms of the plea agreement?

2. Did the trial court abuse its discretion in sentencing Davis?

3. Is Davis's aggregate sentence inappropriate?

We affirm.

On the evening of January 14, 2008, Zarumin Coleman orchestrated a plan with several individuals, including Davis, to break into an Indianapolis home to steal a large amount of marijuana and possibly cash. After obtaining necessary items for the burglary, Coleman drove Davis, Jasper Frazier, and Donte Hobson to the home at 3283 North Hovey Street. The men agreed that Davis and Frazier would be the ones to break into the home while Coleman and Hobson waited in the SUV.

When Davis and Frazier were unsuccessful at entering through the front door, they went back to the SUV. Hobson suggested that they use a crowbar to get in. Davis and Frazier, armed with handguns, went back to the home with the crowbar and eventually gained entry by breaking through a window near the front of the house. Upon entering the house, the men did not find drugs or money, but they eventually located two women hiding with their two babies between a wall and a bed in a back bedroom. The women pleaded for their lives and the lives of their babies. Upon demands for the location of the drugs, Gina

Hunt repeatedly indicated that the drugs were no longer at the home and had been taken elsewhere.

Ultimately, all four victims were shot and killed by one gunman. Gina sustained seven gunshot wounds, including to her right arm, thighs, pelvis, and face. Gina's twenty-three-month-old son, Jordan, was shot in the face and chest. The autopsy report revealed the presence of gun powder stippling on the child's cheek. Andrea Yarrell was shot in the back and the wrist, while her five-month-old daughter, Charlii, was shot in the head and the arm. Frazier and Davis fled after the shooting, and dropped their weapons and other evidence near the home, as police were responding to the area.

Over the next two days, tips came into police indicating that Coleman and Davis might have been involved in the crime. Coleman was arrested on other charges on January 17, and denied any involvement in the instant crime. That same day, detectives learned that Frazier (whose name had not come up in the investigation) was in Ohio and willing to provide information. Early on January 18, Frazier voluntarily came back to Indianapolis and provided a detailed statement to police in exchange for an agreement from the prosecutor not to file murder charges against him. Frazier openly admitted substantial involvement in the crime but indicated that Davis was the actual shooter. According to the lead detective, Frazier broke the case for police. Thereafter, in exchange for similar deals, Coleman and Hobson provided corroborating statements (and later depositions) implicating Davis, as well as themselves. Davis was arrested at his mother's home on January 18 and eventually admitted being involved with the crime, but he claimed Frazier was the shooter.

On January 23, 2008, the State charged Davis with four counts of murder, four counts

3

of felony murder, and one count each of conspiracy to commit robbery as a class A felony, attempted robbery as a class A felony, burglary as a class A felony, and unlawful possession of a handgun by a serious violent felon as a class B felony.[1] The State filed a death-sentence request the following day.

More than two and one-half years after being charged in this case, Davis entered into a plea agreement with the State. Pursuant to the agreement, Davis pleaded guilty to four counts of felony murder (Counts V – VIII), one count of conspiracy to commit robbery reduced to a class B felony (Count IX), and one count of unlawful possession of a handgun by a serious violent felon, a class B felony (Count XII). In exchange, Davis avoided the death penalty and the State dropped the remaining counts. Sentencing was left to the discretion of the trial court, with the exception that the sentence for conspiracy, Count IX, would run concurrently with the other counts. Accordingly, Davis faced a sentence of between 45 and 280 years.

Following a lengthy sentencing hearing on November 10, 2010, the trial court sentenced Frazier to an aggregate sentence of 245 years in prison. Specifically, the court imposed 60 years for each of Counts V, VII, and VIII, 65 years for Count VI (the murder of Jordan Hunt), 20 years for Count IX, and 20 years for Count XII. The sentences for each murder were ordered to be served consecutively, while the remaining sentences were ordered to be served concurrently with Count V.

---

[1] Frazier, Coleman, and Hobson, as well as another individual, were charged in the same criminal information. The State charged Frazier with three class A felony counts – conspiracy to commit robbery, attempted robbery, and burglary – as well as a misdemeanor handgun offense. Coleman was charged with the conspiracy count, class D felony criminal confinement (of Frazier from January 16 to 17), and class B felony

On December 10, 2010, Davis filed a motion to correct error. The trial court held a hearing on April 20, 2011 and took the matter under advisement. On August 16, 2011, the trial court issued a detailed order denying the motion and clarifying its original sentencing order. Davis now appeals.

1.

Davis initially claims that "the 285-year actual sentence" imposed violates the terms of his plea agreement. *Appellant's Brief* at 24. This claim is wholly without merit. As set forth above, Davis received an aggregate sentence of 245 years. The plea agreement provided in relevant part:

> The sentence to be imposed upon the Defendant shall be left to the discretion of the Court with the parties free to argue terms. However, the State agrees that the sentence on Ct. IX (Conspiracy) shall run concurrent with any other sentence imposed.

*Appellant's Appendix* at 1636. Accordingly, the trial court properly indicated at the guilty plea hearing that Davis faced a maximum sentence of 280 years in prison. Davis, in fact, received a sentence below the maximum in part because the trial court ordered both Counts IX and XII to be served concurrently with one of the felony-murder counts. The 245-year sentence imposed clearly did not violate the terms of the plea agreement.

2.

Davis contends the trial court abused its discretion in sentencing him. Specifically, he argues that the trial court found an improper aggravator, failed to find a mitigating factor clearly supported by the record, and failed to adequately consider the comparative culpability

---

unlawful possession of a handgun. Hobson was charged with the conspiracy count, as well as class B felony

of him and his codefendants. We will address each in turn.

It is well settled that sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. The trial court must enter a sentencing statement that includes the court's reasons for the imposition of the particular sentence. *Id.* If the statement includes a finding of aggravating and/or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances. *Id.* An allegation that the court failed to find a particular mitigator requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Webb v. State*, 941 N.E.2d 1082 (Ind. Ct. App. 2011), *trans. denied.* "The relative weight given to the aggravating and mitigating factors is not subject to review." *Id.* at 1088.

With respect to the murder of twenty-three-month-old Jordan Hunt, the trial court found the stippling on his left check to be an aggravating factor because it indicated a "close contact" wound. *Transcript* at 275. Davis responds on appeal, noting the lack of a muzzle imprint: "[t]he wound was a close-range wound, not a contact wound." *Appellant's Brief* at 15. The trial court's language is imprecise, as the court apparently conflated the two terms, but the most reasonable interpretation of the court's statement is that it found the fact that the child was shot in the face at close range to be an aggravating factor. We find no abuse of discretion in this regard.

Davis next argues that the trial court failed to consider his significant brain damage as

unlawful possession of a handgun.

a mitigating factor. He claims that he presented evidence of both mental illness and brain damage and that the trial court improperly considered them together in discussing his "mental health issues" as mitigating factors. *Transcript* at 263.

Our review of the record reveals that the trial court fully considered the medical evidence relating to Davis's mental illness (signs of paranoid schizophrenia and symptoms of PTSD) and brain damage. The practical and relevant effect of both was impaired decision making, including planning, moral judgment, and impulse control. Contrary to Davis's assertions on appeal, his mental illness and brain damage were not clearly presented to the trial court as independent mitigating factors. To be sure, at the sentencing hearing, defense counsel discussed these issues together and along with the conclusions of three experts, noting "Dr. Ferrar, Dr. Hanlon and Dr. Gurr, all came to similar conclusions through independent work." *Id*. at 226. In sum, the trial court entered into a detailed discussion of Davis's psychological and physiological issues when imposing sentence and found them to be of some mitigating weight. We find no error. Moreover, even if we were to find an abuse of discretion, we are confident that the trial court would have imposed the same sentence had it considered Davis's mental illness and brain damage as separate mitigators and, therefore, remand would be unnecessary. *See Anglemyer v. State*, 868 N.E.2d 482.

Finally, with regard to abuse of discretion, Davis argues that "the notion of comparative culpability should work as a mitigating factor in his case." *Appellant's Brief* at 20. He directs us to *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008) in support of his claim that comparative culpability is a proper mitigating factor, which the trial court refused to accept. In *Cardwell*, our Supreme Court expressly reaffirmed that "[n]o authority requires

7

co-participants to receive proportional sentences." *Id*. at 1225 (citing *Lopez v. State*, 527 N.E.2d 1119 (Ind. 1988)). As a result, the Court held that the trial court did not abuse its discretion in refusing to find the relatively slight sentence imposed on Cardwell's codefendant to be mitigating. The same is true in this case.[2]

3.

Davis urges that his 245-year aggregate sentence is inappropriate. We have the constitutional authority to revise a sentence if, after careful consideration of the trial court's decision, we conclude the sentence is inappropriate in light of the nature of the offense and character of the offender. *See* Ind. Appellate Rule 7(B); *Anglemyer v. State*, 868 N.E.2d 482. Even if a trial court follows the appropriate procedure in arriving at its sentence, we maintain the constitutional power to revise a sentence we find inappropriate. *Hope v. State,* 834 N.E.2d 713 (Ind. Ct. App. 2005). Although we are not required under App. R. 7(B) to be "extremely" deferential to a trial court's sentencing decision, we recognize the unique perspective a trial court brings to such determinations. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). The burden of persuading us that the sentence is inappropriate is on the defendant. *Rutherford v. State,* 866 N.E.2d 867.

Davis cannot seriously challenge his sentence on the basis of the nature of the offense, which is among the most heinous in Indiana's history. Gina Hunt and Andrea Yarrell were hiding with their babies in a back bedroom, cowering on the floor between a bed and a wall,

---

[2] Moreover, we note that Frazier pleaded guilty to class B felony conspiracy to commit robbery, class A felony attempted robbery, and a class A misdemeanor handgun offense. The trial court imposed the maximum sentence on all counts and ordered the felonies to be served consecutively, resulting in an aggregate sentence of seventy years in prison. The only crime for which Davis and Frazier were both convicted was the

as Davis and Frazier broke into the residence to steal drugs. Upon being discovered and threatened, Gina indicated that there were no drugs in the home, and she and Andrea pleaded for their own lives and the lives of the two babies. The young women and children were then senselessly and violently murdered just before Davis and Frazier left with nothing. Each victim was shot multiple times. The five-month old and twenty-three-month old were shot in the head, one of them at close range. After a thorough review of the record, we agree with the trial court that all signs (aside from Davis's self-serving statements) point to Davis as the actual shooter, not Frazier. The 245-year sentence is in no way inappropriate in light of the nature of the offense.

With respect to his character, Davis merely points out that he had a horrific childhood and suffers from mental illness and brain damage. We do not doubt this to be true and deserving of some mitigating weight. As the trial court aptly observed, however, these issues do not make Davis any less dangerous. On the contrary, they indicate a propensity for serious criminal behavior that is, in fact, reflected in his criminal history.

Davis was thirty-three years old when he was sentenced in the instant case, and he has spent most of his adult life incarcerated. In 1994, Davis was committed to the Indiana Boys School at the age of seventeen after having been found to have committed an act that would have been class A felony dealing in cocaine if committed by an adult. In October 1996, he committed class B felony dealing in cocaine and was sentenced to ten years executed on May 9, 1997. He was released to parole supervision twice (2002 and 2006) but was returned to

---

conspiracy, and they each received the same twenty-year sentence on that count. Thus, the sentences are in fact comparable to the limited extent that they can be compared.

9

prison within a matter of months each time due to parole violations. While on parole the first time, he committed class D felony criminal confinement and misdemeanor battery. Davis was released to parole supervision a third time in April 2007 and was subsequently released from parole on October 18, 2007.[3] He committed the instant crimes three months later.

We agree with the State and the trial court that Davis is a dangerous person from whom society must be protected. In light of Davis's character and the particularly heinous nature of the crime, we conclude that his 245-year sentence is not inappropriate.

Judgment affirmed.

MAY, J., and BARNES, J., concur.

---

[3] It is important to note that Davis served nearly all ten years of his sentence as a result of losing credit time due to a number of misconduct incidents while in prison.