## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2019, 8:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer A. Joas
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rita White,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 30, 2019

Court of Appeals Case No.
18A-CR-343

Appeal from the Switzerland
Circuit Court

The Honorable W. Gregory Coy,
Judge

Trial Court Cause No.
78C01-0908-FA-1116

**Altice, Judge.**

**Case Summary**

[1] Following a jury trial, Rita White was found guilty of child molesting as a Class A felony and incest as a Class B felony. At sentencing, the trial court merged the offenses and then sentenced White to the maximum term of fifty years for the Class A felony child molesting conviction. White presents three issues for our review:

> 1. Did White knowingly, intelligently, and voluntarily waive her right to counsel?

> 2. Did the trial court rely upon improper aggravating factors in determining White's sentence?

> 3. Is White's sentence inappropriate in light of the nature of the offense and White's character?

[2] We affirm.

## Facts & Procedural History

[3] J.W. was born in 1989 and lived with his mother, White, and his slightly-older brother, R.W., until 1999. The three lived in a two-bedroom apartment where J.W. shared a room with White, and R.W. had his own room. J.W. recalled that beginning when he was about five or six, White "made [him] take [his] penis and put it in her vagina" and "made [him] play with her breast," including putting his mouth on her breast. *Exhibit Vol. III* at 73. White would also "take [J.W.'s] penis and put it in her hands." *Id*. at 75. The molestations continued until J.W. was ten years old.

[4] R.W. remembered living in the apartment and that J.W. shared a room with White. According to R.W., White and J.W. slept with "minimum clothes," "always kept the door closed and locked," and "always took showers and stuff together." *Transcript Vol. II* at 35. On more than one occasion, R.W. walked into the bedroom and saw J.W. "laying on top of [White]" and White yelled at him to "get out." *Id.*

[5] In September 2003, R.W. told his foster mother that "he hated his brother for what his brother had done with" White. *Id.* R.W. then told his foster mother about how J.W. and White would take showers together and have sex. R.W.'s foster mother reported this information to Morris Alford, a case worker with the Switzerland County Division of Family and Children. Alford spoke with R.W., who repeated what he had told his foster mother. Alford also spoke with J.W., who acknowledged having had a sexual relationship with White. Alford reported what he had learned to the state police.

[6] On November 12, 2003, the State charged White with Count I, child molesting as a Class A felony; Count II, incest as a Class B felony; and Count III, criminal deviate conduct as a Class B felony. White was arrested and released on bond the same day. On February 24, 2004, White's counsel filed a motion for psychiatric examination to determine competence to stand trial, which the trial court ordered. In May 2006, the trial court issued a warrant for White's arrest because she "refused to be examined by [court-appointed] psychiatrists when required to do so and has further refused to co-operate with three (3) court appointed attorneys." *Appellant's Appendix Vol. II* at 87.

[7]     White was arrested again in February 2013 and appointed counsel. White posted bond on June 13, 2013. In February 2014, White's trial counsel filed a motion for a hearing to determine White's competency to stand trial. The trial court ordered that White be evaluated by two court-appointed psychiatrists. White cooperated with the evaluations by mental health service providers, and the service providers both submitted reports to the court in which they separately determined that White was competent to stand trial.

[8]     At a pretrial conference on September 8, 2014, White appeared before the trial court and requested permission to represent herself. The trial court addressed White's request:

> Q.     What are your wishes regarding going forward with trial here? Are you wanting to have an attorney, are you wanting to represent yourself?
>
> A.     I'll represent myself.
>
> Q.     Explain to me why you think you can do that because this is a fairly complicated matter?
>
> A.     Her and I just don't get along. We don't see eye to eye.
>
> Q.     Miss Stotts is not the only lawyer you've had in the course of this case if I recall?
>
> A.     I didn't get rid of my other lawyer.

Q. Do you intend to try and seek other counsel or do you really want to try and do this yourself because you do understand you're looking at 30 to 50 years of your life on an A Felony if you're found guilty, do you understand that? You're willing to make that kind of a gamble here?

A. Yes.

Q. Do you understand that you have the right to counsel at no cost to you and Miss Stotts was appointed to represent you in this case and you're saying you don't want her to be your lawyer any more?

A. No.

Q. Have you ever represented yourself in a criminal case before?

A. No, nothing like that.

Q. Are you on any medications at this time?

A. No.

Q. You do understand that you're entitled to be represented by a lawyer and you're waiving your right to do that, correct?

A. Yes.

Q. What we'll do here is remind you again that you do have the right to a lawyer. I'm going to show for the record that we're going to relieve Miss Stotts to the extent that she wouldn't be

representing you at trial.  I am going to ask that she remain as what's called standby counsel.

\* \* \*

If, at any time, while this case is pending, if you wish to request counsel, you certainly can do so but bear in mind, you can't do that the day of trial.  Once we get to trial date or right before that, it will be too late for another lawyer to get ready for trial.  So if you change your mind, you will have to let us know pretty quickly.  We're going to show for the record that you're waiving your right to be represented by an attorney at this time.

*Transcript Vol. II* at 3-5.  White appeared telephonically for a pretrial conference on April 22, 2015, during which the court confirmed the jury trial setting for April 28, 2015, and White affirmatively stated that she was able to be there.  The court again confirmed White's desire to represent herself, engaging in the following colloquy with White:

THE COURT:  And you do not have a lawyer.  We do have a lawyer appointed as standby counsel, that's Miss Stotts, but just so the record is clear, you've been represented in this case a few times by different lawyers but each time you've chosen to ask that they be discharged, is that correct?

A RITA WHITE:  Yes.  Inaudible. . . .

THE COURT:  And you asked that she not be your lawyer?  You want to represent yourself, correct?

A RITA WHITE:  Right.

THE COURT: Now, Miss White, this is not like something you see on t.v. This is unbelievably complicated to do. Have you ever been involved in a jury trial in your life?

A RITA WHITE: Inaudible. . . .

THE COURT: And have you ever attended a trial?

A RITA WHITE: Yes.

THE COURT: Alright. Are you presently on any kind of medication?

A RITA WHITE: No.

THE COURT: You are not on any that you don't understand anything that I'm saying, correct?

A RITA WHITE: No.

THE COURT: Are you employed?

A RITA WHITE: No.

THE COURT: Do you receive any unemployment or any disability or anything?

A RITA WHITE: I get disability.

THE COURT: Now, . . . we need to be sure that you understand that there is a potential penalty that's very serious. If you were to be convicted of the most serious charge against you, there would

be a potential sentence of anywhere from 20 to 50 years in jail. Do you understand that?

A RITA WHITE: Yeah.

THE COURT: And the case would be tried on behalf of the State of Indiana and Mrs. Hensley will be the one representing the State and she is a professional lawyer and for several years she's been involved in jury trials. She knows what she's doing. Her most recent trial was in a case similar to yours, it was a child molesting case. The Defendant was represented by an attorney and that person was found guilty. That person was sentenced, I believe, to 36 years. You're understanding the seriousness of a trial aren't you?

A RITA WHITE: Yeah, . . . . Inaudible. . .

THE COURT: Just so you understand here that in several cases you were appointed a lawyer and they lost contact with you and withdrew from your case and Miss Stotts was appointed to represent you and you actually asked that she be discharged. She is willing to be here to help you. Now you understand that she won't be able to ask any questions of any witnesses for you? Do you understand that?

A RITA WHITE: Yeah I understand.

THE COURT: She won't be doing any of the trial for you . . . .

*Id*. at 7-9. The court then proceeded to explain to White how the trial would proceed, and White indicated that she understood.

Six days later, White failed to appear for her jury trial and was tried *in absentia*. At the conclusion of the trial, the jury found her guilty of Counts I and II.[1] The trial court then issued a warrant for her arrest. White was taken into custody two and a half years later, on December 13, 2017. The trial court held a sentencing hearing on January 12, 2018. The court merged Counts I and II and sentenced White to the maximum term of fifty years for child molesting as a Class A felony. White now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

### 1. Waiver of Right to Counsel

White first argues that she did not knowingly, intelligently, and voluntarily waive her right to counsel. The rights embodied in the Sixth Amendment protect the fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 691 (1984). "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657, 664 (1984). In recognition that the "average defendant does not have the professional legal skills to protect himself" at trial, it is required that a defendant's choice to appear without professional counsel be made intelligently.

---

[1] Count III was dismissed prior to trial.

*Johnson v. Zerbst*, 304 U.S. 458, 462-64, 58 S.Ct. 1019, 1022-23, 82 L.Ed. 1461, 1465-66 (1938).

[11] When a defendant asserts the right to self-representation, the court should tell the defendant of the "dangers and disadvantages of self-representation." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581-82 (1975). There are no prescribed "talking points" the court is required to include in its advisement to the defendant; it need only come to a considered determination that the defendant is making a voluntary, knowing, and intelligent waiver. *Leonard v. State*, 579 N.E.2d 1294, 1296 (Ind. 1991). This determination must be made with the awareness that the law indulges every reasonable presumption against a waiver of this fundamental right. *Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466.

[12] The United States Supreme Court has stated that whether there has been an intelligent waiver of the right to counsel depends on the "particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id*. The Court went on to find that it is the responsibility of the trial judge to determine whether there is an intelligent and competent waiver and that it would be "fitting and appropriate for that determination to appear on the record." *Id*. at 465, 58 S.Ct. at 1023, 82 L.Ed. at 1467. The Court elaborated on the determination of a valid waiver stating that if a defendant chooses to forego the assistance of counsel and to represent herself, "[s]he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that [s]he knows what [s]he is

doing and h[er] choice is made with eyes open." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581-82 (internal quotes omitted).

[13]    Our Supreme Court has adopted four factors for a trial court to consider when determining whether a knowing, voluntary and intelligent waiver has occurred:

> (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed *pro se*.

*Poynter v. State*, 749 N.E.2d 1122, 1127-28 (Ind. 2001) (quoting *U.S. v. Hoskins*, 243 F.3d 407, 410 (7th Cir. 2001)). In making this analysis, a trial court is in the best position to assess whether the defendant has made a knowing, voluntary, and intelligent waiver, and the trial court's finding will most likely be upheld "where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion." *Id*. at 1128 (quoting *U.S. v. Hoskins*, 243 F.3d at 410). White argues that her waiver of her right to counsel was not knowing, voluntary, and intelligent, asserting that that although the trial court did inquire as to her experience in representing herself, the court did not inquire as to her education level or about her mental health, which she asserts was "clearly an issue." *Appellant's Brief* at 14.

[14]    Here, White insisted on representing herself after not seeing eye-to-eye with her fourth appointed attorney. White explained that she did not want counsel to represent her because "[h]er and I just don't get along." *Transcript Vol. II* at 3.

As set out above, the trial court questioned White about her court experience, asked whether she was taking any medication, reminded her of her right to an appointed attorney, and reviewed with her the sentence she faced. Upon deciding to allow White to proceed pro se, the trial court appointed stand-by counsel and explained to White that she could ask stand-by counsel questions regarding the proceedings.

[15] In addition to this inquiry, at the final pre-trial conference, the trial court revisited at length White's decision to represent herself, again reviewing her familiarity with court proceedings, questioning her about her medications and health, and making sure she understood the possible sentence. The court also explained that White was facing a prosecutor who was experienced with this type of case and reiterated the limited role of stand-by counsel. White repeatedly stated that she understood these risks and acknowledged that she understood her responsibilities as the trial court described the trial process.

[16] Having reviewed the record, we conclude that the trial court adequately advised White of the dangers and disadvantages of self-representation. While White now claims that her mental health "was clearly an issue" that the trial court did not address, we note that reports by two court-appointed mental health experts found that White was competent to stand trial. *Appellant's Brief* at 14. One found no evidence of psychosis, but observed that White was "a very cold, self-absorbed, self-centered individual who is very capable of lying and distorting reality to meet her own needs." *Appellant's Appendix* at 124. The other found that White operated within "a normal range of cognitive functioning" and "had

adequate knowledge of Court proceedings." *Id*. at 127. This second mental health expert concluded that White was capable of collaborating with an attorney, but that she was "simply refusing to collaborate." *Id*. There is nothing in the record that suggests that White was mentally incompetent to exercise her right to represent herself at trial. Rather, the record demonstrates that White's decision to represent herself was knowingly and voluntarily made.

## 2. Aggravating Factors

[17] White argues that the trial court abused its discretion in sentencing by relying upon improper aggravating circumstances. Sentencing decisions are within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. A trial court abuses its discretion by

> (1) failing to enter a sentencing statement, (2) entering a sentencing statement that explains reasons for imposing the sentence but the record does not support the reasons, (3) the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or (4) the reasons given in the sentencing statement are improper as a matter of law.

*Kimbrough v. State*, 979 N.E.2d 625, 628 (Ind. 2012). "[W]e will remand for resentencing if we cannot say with confidence that the trial court would have

imposed the same sentence if it considered the proper aggravating and mitigating circumstances." *McCann v. State*, 749 N.E.2d 1116, 1121 (Ind. 2001).

[18]    White argues that the trial court improperly considered as aggravating that she is a sexually violent predator and a credit restricted felon. With regard to the latter, White argues that the laws regarding credit restricted felons did not go into effect until 2008, and thus, application of those statutes to her violate the constitutional prohibition of ex post facto laws. With regard to the former, White asserts that she was not deemed a sexually violent predator until the day of sentencing and thus, such should not have been considered as an aggravating circumstance.

[19]    Even if we assume that the challenged aggravators were improper, the trial court identified numerous other aggravating factors that White does not challenge. *Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002) (holding that even when a trial court improperly applies an aggravator, a sentence enhancement may be upheld if other valid aggravators exist). Indeed, aside from the challenged aggravators, the trial court identified the following aggravating circumstances: (1) the harm, injury, loss, or damage suffered by the victim was significant and greater than the elements necessary to prove the commission of the offenses;[2] (2) the young age of the victim; (3) White's position of trust; (4) the crimes were committed in the presence of another minor, (5) White's lack of

---

[2] The trial court noted that White was convicted of one count of child molesting, but that the evidence was clear that the molesting "was an ongoing thing that occurred multiple times." *Transcript Vol. II* at 60.

remorse; (6) White absconded for more than two years prior to sentencing; and (7) White failed to maintain stable employment. The court also identified mitigating circumstances, including that White had no prior criminal history, the crime was a result of circumstances unlikely to reoccur, White is not likely to commit another crime, and that White suffered from a disability. The court expressly found that the aggravating factors outweighed the mitigating factors. Given the trial court's oral remarks at sentencing and the weight of the remaining aggravating factors, our confidence in the sentence is not diminished by exclusion of the two challenged aggravators.

### 3. Inappropriate Sentence

[20] White argues that the maximum sentence of fifty years is inappropriate in light of the nature of the offense and her character. Indiana Appellate Rule 7(B) provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *See also Davis v. State*, 971 N.E.2d 719, 725 (Ind. Ct. App. 2012). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Schaadt v. State*, 30 N.E.3d 1, 4 (Ind. Ct. App. 2015). When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). White bears the burden of

persuading this court that her sentence is inappropriate. *See Davis*, 971 N.E.2d at 725.

[21] When determining whether a sentence is inappropriate, the advisory sentence is the starting point our legislature has selected as an appropriate sentence for the crime committed. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Here, White was convicted of child molesting as a Class A felony. The sentencing range for a Class A felony is twenty to fifty years with an advisory sentence of thirty years. *See* Ind. Code § 35-50-2-4. White therefore received the maximum sentence.

[22] With regard to the nature of the offense, White argues that "there is nothing factual in this case that makes it more objectionable than other cases involving sexual molestation with the exception that the crime was committed against her son." *Appellant's Brief* at 20. Indeed, White's position as mother of her victim sets her case apart from those cited in her brief. White regularly molested her own son for several years, beginning when he was five or six years old. She directed him to place his penis in her vagina and put his mouth on her breasts. She also fondled his penis. Moreover, White's older child was aware of what White was doing to J.W. and also observed ongoing sexual conduct between White and J.W. The nature of White's offense is reprehensible and deserving of a significant sentence.

[23] With regard to the character of the offender, we observe that although White does not have a history of criminal convictions, she does have a history of prior

charges for neglect of a dependent and a pending charge for disorderly conduct. White also does not appear to be living a productive life, as she reports having no employment and no place to live. While White claims she has been diagnosed with bipolar disorder, she has taken no medication for that condition since 2000 and showed no signs of the disorder during her mental health evaluation. Rather, one of the mental health experts who evaluated White found that she is needy, cold, self-absorbed, self-centered, and "very capable of lying and distorting reality to meet her own needs." *Appellant's Appendix* at 124. White presented no redeeming character evidence. Also, we note that White absconded for many years.

In light of the nature of the offense and White's character, we cannot say that imposition of the maximum fifty-year sentence for Class A felony child molesting is inappropriate.

Judgment affirmed.

Brown, J. and Tavitas, J., concur.